**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| Julie Avalos and Randy Wolfe, on behalf of themselves and all others similarly situated, | § § § | |
| Plaintiffs | § | |
| v. | § | NO. 4:26-cv-00743 |
| | § | |
| Sysco Corporation, | § | Judge Alfred H. Bennett |
| | § | |
| Defendant. | § | |
| | § | |

**DEFENDANT'S MOTION TO DISMISS THE COMPLAINT**

Defendant Sysco Corporation ("Defendant" or "Sysco"), by and through counsel, respectfully requests that this Court, pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), dismiss Plaintiffs' Complaint as set forth in the following memorandum of law.

## I. INTRODUCTION

Sysco offers its employees a wellness program through the Sysco Corporation Group Benefit Plan ("Plan"). The wellness program seeks to discourage tobacco use by offering participants who do not use tobacco products a discount on their plan premiums. Otherwise, they pay $23 more each pay period. The Employee Retirement Income Security Act ("ERISA") explicitly authorizes such wellness programs as a legitimate means of promoting health: "Nothing in [29 U.S.C. § 1182(b)(1)] shall be construed to . . . prevent a group health plan . . . from establishing premium discounts or rebates or modifying otherwise applicable copayments or deductibles in return for adherence to programs of health promotion and disease prevention." 29 U.S.C. § 1182(b)(2). Yet Plaintiffs allege the Plan violated § 1182(b)(1) because it does not also offer participants a "reasonable alternative standard" allowing them to waive the surcharge while continuing to use tobacco. Plaintiffs' allegations require dismissal for several independent reasons.

As an initial matter, Plaintiffs lack Article III standing. The relevant statutes expressly permit plans to charge tobacco users more, with the only exception being that individuals with a medical condition making it "unreasonably difficult" or "medically inadvisable" to stop using tobacco must be offered an alternative standard—like a tobacco cessation program—instead. 42 U.S.C. § 300gg-4(j)(3)(D)(i). Here, neither Plaintiff alleges that they have such a condition. Based on Plaintiffs' own allegations (or lack thereof), they were not eligible for an alternative standard to avoid the tobacco surcharge and no additional information about Sysco's program would change that fact. Thus, Plaintiffs' financial injury—paying the surcharge—was not caused by Defendant's alleged misconduct, nor would it be redressable by a favorable ruling because Plaintiffs would have paid the same amount regardless. *Thole v. U.S. Bank N.A.*, 590 U.S. 538, 540 (2020). Likewise, Plaintiffs lack Article III standing for their asserted informational injury—that Plan communications lacked information about the alternative standard. Plaintiffs do not (nor could they) allege any concrete "adverse effects" from not receiving information about an alternative standard they do not allege they were qualified to use. *TransUnion LLC v. Ramirez*, 594 U.S. 413, 442 (2021) ("informational injury that causes no adverse effects cannot satisfy Article III").

Moreover, even if Plaintiffs had Article III standing to press this lawsuit at all, Count I fails to state a claim because Plaintiffs do not allege that any Plan participant with a qualifying medical condition failed to receive the reasonable alternative standard the statute provides. And the Complaint's allegations of fiduciary breaches in Counts III and IV fail on the merits for three independent reasons.

*First*, Plaintiffs do not challenge fiduciary conduct. Instead, the Complaint challenges "settlor" decisions regarding the Plan design, i.e., the structure of the tobacco surcharge program and the implementation of that program in accordance with its terms. Neither those settlor decisions

nor the implementation of that design is a fiduciary act that can give rise to breach of duty claims. *Hughes Aircraft Co. v. Jacobson*, 525 U.S. 432, 444 (1999) ("ERISA's fiduciary duty requirement simply is not implicated" when the defendant, "acting as the Plan's settlor, makes a decision regarding the form or structure of the Plan such as who is entitled to receive Plan benefits and in what amounts, or how such benefits are calculated."); *Parisi v. Am. Airlines*, 2025 WL 4663147, at *7 (N.D. Tex. Nov. 25, 2025) ("Alleging only that [defendant] implemented a Plan in accordance with allegedly unlawful terms . . . does not transform it into a fiduciary rather than a settlor.").

*Second*, Plaintiffs' prohibited transaction claims within Counts III and IV also fail because Plaintiffs allege no "transaction" between Sysco and the Plan—only the decision by Sysco not to contribute *more* to the Plan. That is not a "transaction" prohibited by ERISA. And although Plaintiffs also complain that Sysco collected their premiums and paid them *to the Plan*, that too is not a prohibited transaction; otherwise, every employer that collects employee premiums—performed by nearly every health and welfare plan and employer in the country—would constitute per se violations of ERISA. That is not the law. *See, e.g.*, *Greene v. Progressive*, 2026 WL 785004, at *12 (N.D. Ohio Mar. 20, 2026) ("To characterize the mere act of collecting premiums and/or surcharges as an unlawful transaction would essentially nullify even ERISA compliant wellness programs.").

*Third*, Plaintiffs' fiduciary breach and prohibited transaction claims brought on behalf of the Plan (Count III) under 29 U.S.C. §§ 1132(a)(2) and 1109 fail for the additional reason that Plaintiffs do not allege the Plan suffered any losses. Plaintiffs allege that, as individual participants in the Plan, they should not have been required to pay the surcharge and so, as *individuals*, they personally suffered a loss. As to the Plan, Plaintiffs allege only that, as the amount of employee premiums (including surcharges) increased Plan assets, the level of Defendant's required employer

contributions decreased in proportion. Compl. ¶ 76. The result is that the Plan had the *same amount of assets* whether surcharges were collected or not. As such, the Plan itself suffered no loss, precluding any claim under Section 1132(a)(2). *E.g.*, *Noel v. PepsiCo., Inc.*, 2026 WL 558118, at *14 (S.D.N.Y. Feb. 27, 2026) ("Even accepting that Defendants used the surcharge funds to offset their own contributions, it is unclear how this conduct could have caused injury to the Plan . . . . The amount contributed to the Plan would seemingly be the same, regardless of whether the contributions were coming from Defendants or tobacco-using participants.").

For all these reasons, and those explained below, the Complaint should be dismissed.

## II.    BACKGROUND

### A.    Legal Background

ERISA prohibits health plans from imposing higher premiums, i.e., "discriminating," based on an employee's health status. 29 U.S.C. § 1182(b)(1). But Congress also mandated that "[n]othing in paragraph (1) [above] *shall be construed* . . . to prevent a group health plan . . . from establishing premium discounts or rebates or modifying otherwise applicable copayments or deductibles in return for adherence to programs of health promotion and disease prevention." *Id*. § 1182(b)(2)(B) (emphasis added).

The Affordable Care Act also requires that if a wellness program imposes any "conditions for obtaining" a "reward"—i.e., a lower premium for medical coverage—that are "related to a health status factor," the wellness program must (1) be "reasonably designed to promote health or prevent disease," (2) provide "the opportunity to qualify for the reward under the program at least once each year," and (3) ensure the "full reward under the wellness program" is "available to all similarly situated individuals." 42 U.S.C. § 300gg-4(j)(3)(B)-(D). To satisfy the third requirement, the statute is clear that a program must provide a "reasonable alternative standard" *only* for those

for whom it is "unreasonably difficult due to a medical condition" or "medically inadvisable" to comply with the program. *Id*. § 300gg-4(j)(3)(D).

### B.      Plaintiffs' Allegations Regarding the Wellness Program

Plaintiffs allege that when participants first enroll in the Plan's wellness program, they indicate whether they use tobacco and, if they do, they pay a surcharge of $23.08 per paycheck. Compl. ¶¶ 15-16, 34, 35. Plaintiffs also claim that if a participant quits using tobacco during the year, they can complete and submit a form by December 1st and Sysco will remove the surcharge going forward and also provide a refund for any surcharge payments from that year. *Id*. ¶ 36.

Plaintiffs allege they each paid the tobacco surcharge. *Neither Plaintiff alleges that it would have been "unreasonably difficult due to a medical condition" or "medically inadvisable" for them to stop using tobacco products*. 42 U.S.C. § 300gg-4(j)(3)(D). Nor do they allege they requested a tobacco cessation program, completed a tobacco cessation program, started a tobacco cessation program, or otherwise took any steps towards reducing their tobacco use.

The Plan is funded through a combination of employer contributions, employee premiums, and tobacco surcharge premiums. The Complaint does not allege that participant contributions—regular premiums or tobacco surcharge amounts—are used for any purpose other than to pay medical benefits for participants or that they are removed from the Plan and given to Sysco.

### C.      Plaintiffs' Claims

The Complaint asserts four counts. Count I alleges that Sysco violated ERISA by failing to offer Plaintiffs a reasonable alternative standard. Compl. ¶¶ 60-63. Count II alleges Sysco failed to notify Plaintiffs of a reasonable alternative standard. *Id*. ¶¶ 64-69. Counts III and IV allege that Sysco breached its fiduciary duties by collecting the surcharges, not contributing as much to the Plan, and disseminating Plan information to participants that omitted required information about the alternative standard. *Id*. ¶¶ 70-91. Counts III and IV further allege Defendant engaged in

prohibited transactions by not contributing as much to the Plan. *Id*. ¶¶ 75-77, 87-89. Plaintiffs bring

Count III on behalf of the Plan under 29 U.S.C. §§ 1132(a)(2) and 1109, while Count IV is brought

on behalf of themselves under 29 U.S.C. § 1132(a)(3). *Id*. ¶¶ 79, 91.

## III.    ARGUMENT

### A.    Plaintiffs Lack Article III Standing for Their Claims

"[T]he requirement that a claimant have standing is an essential and unchanging part of the

case-or-controversy requirement of Article III." *Davis v. Fed. Election Comm'n*, 554 U.S. 724, 733-

34 (2008). Plaintiffs bear the burden of establishing each of the three prongs of Article III standing:

(1) they suffered an injury in fact that is concrete, particularized, and actual or imminent; (2) the

injury was caused by Defendant's challenged conduct; and (3) the injury would be redressed by the

judicial relief Plaintiffs seek. *Thole*, 590 U.S. at 540. "There is no ERISA exception to Article III."

*Id.* at 547 (affirming dismissal of ERISA class action on Article III standing grounds).

#### 1.    Plaintiffs Lack Standing to Challenge the Plan's Alleged Failure to Provide a Reasonable Alternative Standard Because the Complaint Does Not Allege They Were Eligible for That Alternative Standard

Plaintiffs are tobacco users who were given the choice under the Plan to use tobacco and

pay the surcharge or not use tobacco and avoid the surcharge. That is, tobacco use is the "primary"

standard against which the surcharge is assessed. At the core of each of Plaintiffs' claims is their

complaint that they were not offered the opportunity to complete an "alternative" standard—like a

tobacco cessation program—to avoid the surcharge while they continue using tobacco.

The statutory language, however, is clear. A plan is required to offer a "reasonable

alternative standard" only to participants "for whom . . . it is unreasonably difficult ***due to a medical***

***condition*** to satisfy the otherwise applicable standard" or "for whom . . . it is ***medically inadvisable***

to attempt to satisfy the otherwise applicable standard." 42 U.S.C. § 300gg-4(j)(3)(D)(i) (emphasis

added). Here, the Complaint does not allege that either Plaintiff met those conditions. Neither

6

Plaintiff alleges that they have a "medical condition" that makes it "unreasonably difficult" or "medically inadvisable" for them to stop using tobacco products. *See* Compl. ¶¶ 1-49. So, even if Sysco was required to offer an alternative standard to some *other* employees, Plaintiffs do not allege facts that the Plan was required to offer it to them.

This is fatal to their claims because it means they fail to satisfy two separate prongs required for Article III standing: (1) Plaintiffs fail to assert that their injury was ***caused*** by Defendant's alleged misconduct because Plaintiffs would have paid the surcharge regardless of whether the Plan offered the alternative standard to those for whom it was medically inadvisable or unreasonably difficult to cease using tobacco; and (2) Plaintiffs fail to allege their injury would be ***redressed*** by the relief they seek because Plaintiffs would not be entitled to their requested alternative standard and would continue to pay the surcharge even if the Plan used the statutory language verbatim.

### a. Plaintiffs Fail to Allege Any Injury Caused by Defendant's Alleged Misconduct

Article III requires a plaintiff to allege their injury is "fairly traceable to the challenged action of the defendant." *Friends of the Earth v. Laidlaw Env't Servs.*, 528 U.S. 167, 180-81 (2000). If the injury would have occurred regardless of Defendant's allegedly unlawful conduct, Article III standing does not exist because there is no causality. *See Ford v. NYLCare Health Plans of Gulf Coast, Inc.*, 301 F.3d 329, 333 (5th Cir. 2002) (plaintiffs' loss of income was not "fairly traceable" to defendant's alleged misconduct because "[t]here is no evidence . . . to show that [plaintiff's] income has in fact declined any more than would be expected as a result of events completely unrelated to [defendant's] activities"). In the discrimination context, courts have found that plaintiffs failed to demonstrate Article III causation when they are not otherwise qualified to receive the benefit they claim the defendant unlawfully denied them. *See, e.g.*, *Wilson v. Glenwood Intermountain Props., Inc.*, 98 F.3d 590, 593 (10th Cir. 1996) (finding "a person who fails to satisfy

lawful, nondiscriminatory requirements or qualifications for the benefit lacks standing to raise claims of discrimination in the denial of the benefit"); *Wade v. Akaka*, 2012 WL 6115656, at *7 (S.D. Tex. Nov. 2, 2012), *report and recommendation adopted*, 2012 WL 6115056 (S.D. Tex. Dec. 10, 2012) (finding plaintiff "still would not be able to prove causation for the purposes of standing" for his age-discrimination claim "because he is ineligible to receive benefits pursuant to the Act regardless of his age").[1]

So too here. While Plaintiffs allege they were injured by paying the tobacco surcharge, that injury was not caused by the allegedly illegal aspects of the Plan's tobacco surcharge because Plaintiffs have pled no medical condition that would have entitled them to an alternative standard under the statute regardless. 42 U.S.C. § 300gg-4(j)(3)(D)(i). Based on their own allegations, Plaintiffs would have paid the surcharge whether the alternative standard required by the statute was offered or not. *See supra*. They lack Article III standing as a result.

### b.    Plaintiffs Fail to Allege Any Injury That Would Be Redressable by the Relief They Seek

For similar reasons, Plaintiffs separately fail to satisfy the third requirement of Article III standing—"that the injury would likely be redressed by the requested judicial relief." *Thole*, 590 U.S. at 540. When, as here, no court-mandated relief would remedy the alleged injury, there can be no redressability as required by Article III. *See Wilson*, 98 F.3d at 594 (no Article III standing for Fair Housing Act claims because requested relief would "not redress plaintiffs' injury because they

---

[1] *See also Day v. Bond*, 500 F.3d 1127, 1134 (10th Cir. 2007) (finding non-resident plaintiffs failed to establish Article III causality and redressability for their challenge to permitting illegal aliens to pay in-state resident tuition because plaintiffs were ineligible for resident tuition); *Brunet v. City of Columbus*, 1 F.3d 390, 398-99 (6th Cir. 1993) (male firefighters lacked Article III standing to challenge hiring of female applicants out of rank order because they themselves were not eligible for hiring); *Doherty v. Rutgers Sch. of Law-Newark*, 651 F.2d 893, 899-902 (3d Cir. 1981) (white applicant for law school admission lacked standing to challenge minority admissions program because he was not qualified for admission even in the absence of the allegedly unlawful program).

would still not be qualified to rent apartments reserved for BYU students"); *Bashir v. Sup. Ct. of Ohio*, 652 F.2d 641, 643 (6th Cir. 1981) (attorney lacked standing to challenge U.S. citizenship bar requirement because he separately failed to satisfy requirement of admission to bar in another state and so the court "would be powerless to fashion a remedy" to redress the alleged injury); *Doherty*, 651 F.2d at 899-902 (white law school applicant could not show that "his injury, rejection of his application for admission, would be redressed" even if the challenged minority admissions program was invalidated because his low admissions score prevented his admission in any event).[2]

Redressability is lacking here: even if Defendant were ordered to reform the Plan to provide the alternative standard sought by Plaintiffs (*see* Compl. at Prayer for Relief), it would "not redress plaintiffs' injury because they would still not be qualified" for the alternative standard under the statute to avoid the surcharge. *Wilson*, 98 F.3d at 594. This is a separate basis for finding no Article III standing.

### c.   Alleged Violations of Agency Regulations Do Not Remedy Plaintiffs' Article III Standing Deficiencies

Plaintiffs claim that Defendant violated *agency regulations*—separate from ERISA's statutory requirements—but these allegations are of no help to them. *See, e.g.*, Compl. ¶¶ 28, 31 (claiming an alternative standard must be provided to "all similarly situated individuals" regardless of medical condition under 29 C.F.R. § 2590.702(f)(4)(iii)).

*First*, ERISA does not authorize Plaintiffs to bring claims for violations of regulations. Plaintiffs purport to bring their claims under 29 U.S.C. §§ 1132(a)(2) and 1132(a)(3). Compl. ¶¶ 63, 69, 79, 91. But both enforcement provisions allow a participant to seek redress for statutory

---

[2] Plaintiffs' lack of Article III standing dooms both their individual claims (Counts I, II, and IV) and their claims on behalf of the Plan (Count III). The Supreme Court has made clear that ERISA plaintiffs must first have individual standing even if they are bringing claims in a representative capacity on behalf of an ERISA plan. *See Thole*, 590 U.S. at 543.

9

violations only, not violations of regulations. Specifically, section 1132(a)(3) allows a participant to sue for a violation of "*this subchapter*" of ERISA. 29 U.S.C. § 1132(a)(3) (emphasis added). Section 1132(a)(2) similarly allows suit "for appropriate relief under section 1109 of this title," which creates liability for a plan fiduciary "who breaches any of the responsibilities. . . imposed upon fiduciaries *by this subchapter*." 29 U.S.C. § 1109(a) (emphasis added).

The phrase "this subchapter" has been consistently held to be limited to violations of statutory provisions only, not regulations. *See, e.g.*, *Kucana v. Holder*, 558 U.S. 233, 237 (2010) ("[T]he key words 'specified under this subchapter' refer to statutory, but not to regulatory, specifications.") (addressing different statute); *Kollman v. Hewitt Assocs.*, *LLC*, 487 F.3d 139, 146-47 (3d Cir. 2007) (explaining that "the words 'this subchapter' in § 502(c) [of ERISA, 29 U.S.C. § 1132(c)] refer only to violations of statutorily imposed obligations, and that the term does not embrace violations of regulations promulgated pursuant to the statute") (cleaned up); *Wilczynski v. Lubermens Mut. Cas. Co.*, 93 F.3d 397, 407 (7th Cir. 1996) (same).[3] Accordingly, this Court should disregard Plaintiffs' allegations to the extent they claim violations of agency regulations, rather than statutory provisions, which they are not authorized to bring under ERISA.

***Second***, the Court should disregard Plaintiffs' claimed regulatory violations because the regulations contradict the unambiguous terms of the statute. ERISA requires a "reasonable alternative standard" to be offered only to participants for whom it is "unreasonably difficult due to a medical condition" or "medically inadvisable" to comply with the wellness program's requirements. 42 U.S.C. § 300gg-4(j)(3)(D). Yet the Complaint alleges that regulations require an

---

[3] *See also Anderson v. Sotheby's Inc. Severance Plan*, 2005 WL 1309056, at *3-4 (S.D.N.Y. May 31, 2005) (dismissing claim for violation of regulations because a violation of "this subchapter" in ERISA "refers only to violations of statutorily imposed obligations" and not implementing regulations) (cleaned up); *Chendes v. Xerox HR Sols., LLC*, 2017 WL 4698970, at *12 (E.D. Mich. Oct. 19, 2017) (similar).

alternative standard for *everyone* regardless of medical condition. *See* Compl. ¶¶ 29, 21 (citing 29 C.F.R. § 2590.702(f)(4)(iii)). The regulations purport to excise from the statute the words "for any individual for whom, for that period, it is unreasonably difficult due to a medical condition to satisfy the otherwise applicable standard" and "for any individual for whom, for that period, it is medically inadvisable to attempt to satisfy the otherwise applicable standard." 42 U.S.C. § 300gg-4(j)(3)(D)(i)(I) and (II).

The Supreme Court has made clear that regulations are invalid if they do not properly implement statutory text. *See Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 400 (2024). *Loper Bright* demands the "best reading" of a statute be determined by a court, not a federal agency. *Id*; *see also See Van Loon v. Dep't of the Treasury*, 122 F.4th 549, 566 (5th Cir. 2024) (courts are required to "'determine the best reading of a statute'; a merely 'permissible' reading is not enough") (citations omitted).[4] Here, Plaintiffs' cited regulations provide no basis for this Court to ignore ERISA's statutory requirement that an alternative standard is required only for participants for whom it is "unreasonably difficult due to a medical condition" or "medically inadvisable" to comply with the wellness program's requirements. *Id*. (following *Loper Bright* in finding Office of Foreign Assets Control exceeded its statutory authority in setting its regulatory definition of "property" to include privacy-enabling software code). Accordingly, to the extent Plaintiffs may assert that they possess Article III standing based on violations of the regulations and not the statutory text, the Court should reject those arguments.

---

[4] Even prior to *Loper Bright*, the Fifth Circuit invalidated regulations that were contrary to the statutory text. *See Cargill v. Garland*, 57 F.4th 447, 467 (5th Cir. 2023), *aff'd*, 602 U.S. 406 (2024) (invalidating regulations issued by the Bureau of Alcohol, Tobacco, Firearms, and Explosives purporting to regulate bump stocks as outside the definition of "machineguns" in federal law).

11

### 2. Plaintiffs Lack Article III Standing to Challenge Wellness Program Disclosures

Plaintiffs also lack Article III standing to challenge Plan communications. *See* Compl. ¶¶ 64-69. The Supreme Court has held that an "informational injury that causes no adverse effects cannot satisfy Article III." *TransUnion LLC*, 594 U.S. at 442. Rather, plaintiffs must identify "downstream consequences" resulting from "failing to receive the required information" to establish an injury in fact. *Id*.; *see also Campaign Legal Ctr. v. Scott*, 49 F.4th 931, 936 (5th Cir. 2022) (no Article III standing for "informational injuries" arising from state's alleged refusal to provide voter information).

Here, Plaintiffs assert no "downstream consequences." The Complaint alleges that Plan communications failed to disclose "the availability of a reasonable alternative standard" and provide related information on that standard, which they claim "made it more difficult for them to understand how to avoid the surcharge." Compl. ¶¶ 39, 42. A pure "informational injury" of this kind is not sufficient to confer Article III under *TransUnion*, 594 U.S. 413. And claims that missing information made issues confusing or "difficult . . . to understand," Compl. ¶ 39, have been consistently rejected by courts for failing to allege a concrete injury. *See e.g.*, *Perez v. McCreary, Veselka, Bragg & Allen, P.C.*, 45 F.4th 816, 825 (5th Cir. 2022) ("the state of confusion, absent more, is not a concrete injury under Article III"). Moreover, Plaintiffs' claimed informational injury is purely speculative. *Barber v. Bryant*, 860 F.3d 345, 357 (5th Cir. 2017) ("An injury that is based on a 'speculative chain of possibilities' does not confer Article III standing.") (citing *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 414 (2013)); *Campaign Legal Ctr.*, 49 F.4th at 937 ("Plaintiffs' injury must be more than speculative"). While they claim that "participants **like** Plaintiffs . . . **may have taken** timely steps" to "avoid the surcharge," they do not allege any concrete injury *they suffered* from allegedly not receiving information concerning the surcharge. Compl. ¶ 42 (emphasis

added); *see TransUnion*, 594 U.S. at 440 (finding no standing where there was "no evidence . . . that the plaintiffs would have tried to correct their credit files—and thereby prevented dissemination of a misleading report—had they been sent the information in the proper format.").

As explained, Plaintiffs do not even allege that they had a medical condition that would have made it unreasonably difficult or medically inadvisable to cease using tobacco. So even if Plan communications stated that employees who use tobacco could avoid the tobacco surcharge if they had a medical condition that would have made it unreasonably difficult or medically inadvisable to cease using tobacco, Plaintiffs do not allege that they would have satisfied that condition.[5]

**B.    Plaintiffs Fails to State a Claim For Failure to Provide a Reasonable Alternative Standard (Count I).**

Even if Plaintiffs had Article III standing (they do not), Count I fails because Plaintiffs do not allege any Plan participant with a qualifying medical condition failed to receive the reasonable alternative standard the statute provides. The statute expressly provides that "nothing in this section shall be construed to prevent . . . a group health plan . . . from establishing premium discounts or rebates . . . in return for adherence to programs of health promotion and disease prevention." 42 U.S.C. § 1182(b)(2)(B). Although Plaintiffs assert in conclusory fashion that Sysco's program does not comply with the statute, the Complaint does not identify a single individual—Plaintiffs or otherwise—who requested and was denied a reasonable alternative standard. Instead, Plaintiffs rely

---

[5] In other words, Plaintiffs' "informational injuries" lack Article III standing because they do not satisfy the separate causality and redressability requirements described above. *See supra* at 7-9. Defendant's asserted misconduct—failing to inform Plaintiffs of the wellness program's alternative standard—did not *cause* Plaintiffs to pay the surcharge, since they would not be entitled to the alternative standard without a medical condition anyway. Redressability is likewise lacking because, even if the Court ordered Defendant to provide the requested notice, Plaintiffs still could not avail themselves of the alternative standard and would continue to pay the surcharge. *Id*. (collecting cases).

on conclusory allegations that Sysco "fails to make available" an alternative standard without plausibly alleging that any qualifying participant requested one. *See* Compl. ¶¶ 1, 4, 8, 12-13, 34-35. The statute requires a reasonable alternative standard only for individuals for whom a "medical condition" makes it "unreasonably difficult" or "medically inadvisable" to satisfy the initial standard (i.e., to give up tobacco). 42 U.S.C. § 300gg-4(j)(3)(D)(i). The Complaint again contains no allegation that Plaintiffs (or *any* participant) fell into either category, much less that they communicated that information to Sysco and requested an alternative on that basis. *See supra* at 6-7. Absent any factual allegations satisfying these statutory requirements, Count I fails to state a claim and should be dismissed under Rule 12(b)(6).

> **C.    Plaintiffs' Complaint Fails to State a Fiduciary Breach Claim (Counts III-IV)**

Plaintiffs' fiduciary breach claims (Counts III and IV) separately fail to state a claim for three reasons: (1) Plaintiffs fail to identify any fiduciary conduct; (2) Plaintiffs' prohibited transaction claim fails both to identify any underlying fiduciary conduct or to identify any "transaction" prohibited by ERISA; and (3) Plaintiffs do not allege that the Plan suffered a loss.

> **1.    Plaintiffs' Fiduciary Duty Claims (Counts III-IV) Fail Because They Do Not Challenge Any Fiduciary Conduct**

The "threshold question" about any claim alleging "breach of an ERISA fiduciary duty" is "whether [the defendant] . . . was acting as a fiduciary (that is, was performing a fiduciary function) when taking the action subject to complaint." *Lee v. Verizon Commc'ns, Inc.*, 837 F.3d 523, 536 (5th Cir. 2016) (quoting *Pegram v. Herdrich*, 530 U.S. 211, 226 (2000)). Only fiduciary acts give rise to fiduciary duties under ERISA. *Id*. By contrast, when an employer acts in a settlor capacity—for instance, in deciding whether "to modify, amend or terminate the plan" or to modify "the composition or design of the plan itself"—no fiduciary function exists. *Hughes Aircraft Co.*, 525 U.S. at 444. Applying this distinction in *Hughes Aircraft*, the Supreme Court found "ERISA's

14

fiduciary duty requirement simply is not implicated" when the defendant, "acting as the Plan's settlor, makes a decision regarding the form or structure of the Plan such as who is entitled to receive Plan benefits and in what amounts, or how such benefits are calculated." *Id.*

Here, Plaintiffs' fiduciary breach claims (Counts III and IV) implicate settlor, not fiduciary, conduct. The Complaint's central claim is that Defendant allegedly offered "a structurally defective wellness program" by "decid[ing] not to offer reasonable alternative standards" required by ERISA. Compl. ¶ 73. But Defendant's alleged decision on how to "structure" and "design" its wellness program—including whether to offer an alternative standard—is a settlor decision that cannot support a breach of fiduciary claim as a matter of law, as *Hughes Aircraft* makes clear.[6] *See Lee*, 837 F.3d at 536 (rejecting fiduciary breach claims because "the decision to amend a pension plan concerning the composition or design of the plan is a settlor function, immune from fiduciary strictures"); *Kirschbaum v. Reliant Energy, Inc.*, 526 F.3d 243, 251 (5th Cir. 2008) ("Because the Plan's design was allotted to [the employer], as settlor, the company had no fiduciary duty concerning such terms.").

Plaintiffs' allegations that Sysco reduced its Plan funding in proportion to surcharges does not move the needle. *See* Compl. ¶ 74. An employer's funding of an ERISA plan is not fiduciary activity. *See Humana Health Plan, Inc. v. Nguyen*, 2016 WL 4718194, at *10 (S.D. Tex. Sep. 8, 2016) (finding "employers . . . act[] as an employer and plan sponsor when they engage in settlor functions," including "funding . . . the plan"); *In re Dynegy, Inc. ERISA Litig.*, 309 F. Supp. 2d 861, 892 (S.D. Tex. 2004) (dismissing fiduciary breach claims because the decision to fund plan

---

[6] The Complaint repeatedly alleges Defendant's breach arises from settlor conduct in "structuring" and "designing" its wellness program. *See, e.g.*, Compl. ¶ 40 (alleging "Defendant's wellness program is . . . ***structured*** in a manner" that violates ERISA); ¶ 44 (alleging Defendant offered "a program ***designed***" to "violat[e] the regulatory framework"); ¶ 74 (alleging Defendant failed to properly "supervise the program's ***design***") (emphases added).

15

contributions with company stock "is a design feature of the Plan over which [defendants] lack fiduciary authority").[7]

Lastly, to the extent Plaintiffs allege Sysco breached its fiduciary duty by "administering a Plan that did not conform with ERISA's anti-discrimination requirements," Compl. ¶¶ 73-74, that too does not implicate fiduciary conduct. Merely following a plan's terms—even if those terms are unlawful—is not a fiduciary breach. *Parisi* is instructive. There, the plaintiffs claimed that fiduciaries breached their fiduciary duties by applying illegal actuarial assumptions to calculate benefits called for under the Plan. Judge O'Connor from the Northern District of Texas aptly rejected that argument, holding that "[a]lleging only the [defendant] implemented a Plan in accordance with allegedly unlawful terms . . . does not transform it into a fiduciary rather than a settlor."[8] *Parisi*, 2025 WL 4663147, at *7. Likewise, merely collecting surcharges from participants

---

[7] *See also Akers v. Palmer*, 71 F.3d 226, 223, 230-32 (6th Cir. 1995) (upholding dismissal of fiduciary breach claims because employer's "decision to establish [the plan] *and to fund it . . .* was the act of a settlor, immune from scrutiny under Title I of ERISA") (emphasis added); *Glazing Health & Welfare Fund v. Lamek*, 896 F.3d 908, 911 (9th Cir. 2018) (upholding dismissal of fiduciary breach claims alleging employer failed to provide required plan funding because "an employer cannot be an ERISA fiduciary with respect to unpaid contributions"); *In re Wachovia Corp. ERISA Litig.*, No. 09CV262, 2010 WL 3081359, at *11 (W.D.N.C. Aug. 6, 2010) ("Decisions regarding the amount of company contributions are funding decisions, and funding decisions are settlor functions which do not implicate fiduciary duties."); *In re RCN Litig.*, No. 04–5068(SRC), 2006 WL 753149, at *6 n.4 (D.N.J. Mar. 21, 2006) (changes to the amount of company contributions were "not functions undertaken in the Company's role of plan administrator and do not implicate ERISA's fiduciary duties").

[8] *See also Cement & Concrete Workers Dist. Council Pension Fund v. Ulico Cas. Co.*, 387 F. Supp. 2d 175, 184 (E.D.N.Y. 2005), *aff'd*, 199 F. App'x 29 (2d Cir. 2006) (concluding that "[t]rustees do not breach their fiduciary duties under ERISA simply by presiding over a plan which fails in some respect to conform to one of ERISA's myriad provisions"); *Hamrick v. E.I. DU Pont de Nemours & Co.*, 2024 U.S. Dist. LEXIS 17497, at *14-16 (D. Del. Jan. 31, 2024) (recommending dismissal of breach of fiduciary duty claim finding that there is no fiduciary duty "to not follow plan documents that are not consistent with ERISA") *adopted* 2024 U.S. Dist. LEXIS 97910, at *3 (D. Del. June 3, 2024); *Skrtich v. Pinnacle W. Cap. Corp.*, 2023 U.S. Dist. LEXIS 136862, at *13 (D. Ariz. Aug. 7, 2023) (no fiduciary duty to ignore plan terms that may be in violation of ERISA); *Laurent v. PricewaterhouseCoopers LLP*, 2018 WL 502239, at *3 (S.D.N.Y. Jan. 19, 2018), *aff'd*, 945 F.3d 739, 747 (2d Cir. 2019) (plan administrators "do not

based on plan terms is not fiduciary conduct. *See* 29 C.F.R. § 2509.75-8 (D-2) ("[c]ollection of contributions . . . as provided in the plan" is not a fiduciary act as it involves no "discretionary authority or control"); *Arnett v. Aetna Life Ins. Co.*, 2016 WL 6883203, at *3 (S.D. Tex. Apr. 14, 2016) (dismissing fiduciary breach claims because "[t]he withholding of [health plan] premiums for coverage is a purely ministerial function that does not give rise to a breach of fiduciary duty").[9]

Indeed, courts have dismissed similar fiduciary breach claims in the tobacco surcharge context. *See Noel*, 2026 WL 558118, at *13 (dismissing similar fiduciary breach claim related to implementing a tobacco surcharge program because "[t]here can be no breach of fiduciary duty where an ERISA plan is implemented according to its written, nondiscretionary terms") (collecting cases, internal citation omitted); *Parker v. TTEC Holdings, Inc.*, No. 23-cv-03148, slip op. at *13 (Mar. 30, 2026) ("Because [plaintiff] argues only that TTEC designed and implemented a faulty plan, she has not plausibly alleged fiduciary conduct."); *Greene*, 2026 WL 785004, at *12 (dismissing fiduciary breach claims because "Defendant . . . acted as a settlor when it designed the wellness programs that Plaintiffs now challenge"). As in *Noel*, *Parker*, and *Greene*, Plaintiffs' fiduciary breach claims should be dismissed.

### 2. Plaintiffs' Prohibited Transaction Claims (Counts III-IV) Fail Because Plaintiffs Fail to Identify Any Fiduciary Acts or Any "Transaction"

As part of their fiduciary breach claims, Plaintiffs assert that Defendant engaged in a prohibited transaction in violation of 29 U.S.C. § 1106 because the collection of surcharges allowed

---

breach their fiduciary duties under ERISA simply by presiding over a plan which fails in some respect to conform to one of ERISA's myriad provisions"); *Paul v. RBC Cap. Mkts. LLC*, 2018 WL 3630290, at *7 (W.D. Wash. July 31, 2018) ("[C]orrectly enforcing a flawed plan does not support a breach of fiduciary duty claim as a matter of law.").

[9] *See also Moon v. BWX Tech., Inc.*, 577 F. App'x 224, 231 (4th Cir. 2014) (identifying the collection of premiums from participants as a ministerial function unable to support a fiduciary breach claim).

Sysco to reduce its employer contributions to the Plan. Compl. ¶¶ 75, 87. These claims fail for two independent reasons.

*First*, ERISA's prohibited transaction provisions apply only to fiduciary conduct. *See* 29 U.S.C. § 1106(a) & (b) ("A fiduciary with respect to a plan shall not . . ."). But Plaintiffs allege *no* fiduciary conduct to support their prohibited transaction claims. *See supra* at 14-17.

*Second*, Plaintiffs' prohibited transaction claims separately fail because §§ 1106(a)(1) and 1106(b)(1) require Plaintiffs to identify a "transaction" between the Plan and Sysco. *See Wright v. Or. Metallurgical Corp.*, 360 F.3d 1090, 1101 (9th Cir. 2004) (affirming dismissal of prohibited transaction claims because "[p]laintiffs fail to identify any transaction that falls within § 1106(a)(1) or (b)"); *Brown v. Peco Foods, Inc.*, 2025 WL 3210857, at *9 n.6 (S.D. Miss. Nov. 14, 2025). Collecting employee health plan premiums and paying them to a plan is not a "transaction" that Congress deemed "likely to injure the pension plan" and which it prohibited under § 1106. *Harris Tr. & Sav. Bank v. Salomon Smith Barney, Inc.*, 530 U.S. 238, 241-42 (2000). Indeed, were it otherwise, then any wellness program—and indeed, anytime an employer collected any premiums from employees for health or other benefits—would be a "prohibited transaction." That is not the law, which is why courts have rejected nearly identical claims on this basis. *See e.g.*, *Greene*, 2026 WL 85004, at *12 ("To characterize the mere act of collecting premiums and/or surcharges as an unlawful transaction would essentially nullify even ERISA compliant wellness programs.").[10] Plaintiffs further allege Sysco violated § 1106 because it contributed less to the Plan. But again, *not*

---

[10] Courts have also rejected such allegations because employee contributions do not become "plan assets" subject to § 1106 until they can be "reasonably segregated" from an employer's general assets, which can be "up to ninety days" after being withheld. *See* 29 C.F.R. § 2510.3-102(a), (c). Plaintiffs in those cases—like Plaintiffs here—failed to allege defendant retained those funds beyond the ninety-day limit. "Without plausible allegations that unpaid contributions are Plan assets, Plaintiff has not adequately alleged a violation of 29 U.S.C. § 1106." *Schultz v. Glen Falls Hosp.*, No. 25-cv-00581, slip op. at 25-26. *See also Noel*, 2026 WL 558118, at *15 n.14 (same).

18

contributing certain money to a plan is not a "transaction" with a plan; it is the opposite. For that reason, courts have specifically held that an employer's reduction in contributions is not a "transaction" for purposes of § 1106. *See Brown*, 2025 WL 3210857, at *8 (finding reduction of employer contributions does not constitute a "transaction" under § 1106(a) or (b)).

### 3. Plaintiffs' Claims on Behalf of the Plan (Count III) Separately Fail Because They Do Not Allege the Plan Suffered Any Loss

In Count III, Plaintiffs bring their fiduciary breach and prohibited transaction claims under 29 U.S.C. § 1132(a)(2) "on a representative basis on behalf of the Plan." Compl. ¶ 79. These claims fail for all the reasons explained above, but also because to state a claim under § 1132(a)(2), Plaintiffs must allege loss *to the Plan*. *Mertens v. Hewitt Assocs.*, 508 U.S. 248, 252 (1993). They do not do so here. Instead, Plaintiffs allege only that they personally suffered losses "in the form of unlawful surcharges that were deducted from their paychecks." Compl. ¶ 78. Those are "losses" to them individually, not losses to the Plan. To the contrary, the Plan received those collected surcharges. So the Plan benefited from the surcharges. In addition, Plaintiffs allege that Sysco contributed less to the Plan based on the surcharges. *Id*. ¶ 72. Again that is not fiduciary conduct, and in any event, is a wash because, according to the Complaint, the Plan received the same total dollars, whether from employees (surcharges) or from Sysco (employer contributions). Either way, Plaintiffs allege no loss *to the Plan* because any reductions in Defendant's contributions occurred only in direct proportion to the increase in employee contributions based on surcharges; the Plan had precisely the same level of assets before and after surcharges were collected. *See id*.

Courts have repeatedly reached the same conclusion, and this Court should too. *See Schultz*, slip op. at 24-26 ("The Plan was not harmed by Defendant offsetting its own contributions with the surcharge proceeds"); *Noel*, 2026 WL 558118, at *14 ("Even accepting that Defendants used the surcharge funds to offset their own contributions, it is unclear how this conduct could have caused

19

injury to the Plan . . . . The amount contributed to the Plan would seemingly be the same, regardless of whether the contributions were coming from Defendants or tobacco-using participants.").[11] Absent any loss to the Plan itself, Plaintiffs cannot state a claim under § 1132(a)(2).

## IV.    CONCLUSION

This Court should dismiss Plaintiffs' Complaint with prejudice under Rules 12(b)(1) and 12(b)(6).

Dated: April 30, 2026

Sean McMahan
Texas Bar No. 24130831
S.D. Tex. No. 1045634
1000 Louisiana Street, Suite 4000
Houston, Texas  77002
Telephone: 713.890.5000
sean.mcmahan@morganlewis.com

Respectfully submitted,
**MORGAN, LEWIS & BOCKIUS LLP**

/s/ *Jeremy P. Blumenfeld*
Jeremy P. Blumenfeld, *Admitted Pro Hac Vice*
Attorney-In-Charge
Pennsylvania Bar No. 85955
2222 Market Street
Philadelphia, PA  19103
Telephone: 215.963.5000
jeremy.blumenfeld@morganlewis.com

## CERTIFICATE OF SERVICE

The undersigned counsel certifies that a true and correct copy of the foregoing document was served via the Court's ECF/CM e-filing system to all counsel of record on April 30, 2026.

/s/ *Jeremy P. Blumenfeld*
Jeremy P. Blumenfeld

---

[11] *See also Dubin v. CVS Pharm.*, No. 25-cv-05931, slip op. at 19 (C.D. Cal. Jan. 16, 2026); *Williams v. Bally's Mgmt. Grp., LLC*, No. 25-cv-147, 2025 WL 3078747, at *13-14 (D.R.I. Nov. 4, 2025); *Artis v. Gardaworld*, No. 24-CV-00837, slip op. at 14 (W.D.N.C. Aug. 28, 2025); *Chirinian v. Travelers Cos.*, No. 24-cv-3956, 2025 WL 2147271, at *12 (D. Minn. July 29, 2025); *Parker*, slip op. at *13; *Sec'y of Lab. v. Macy's*, 2021 WL 5359769, at *9 (S.D. Ohio Nov. 17, 2021).